## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

FACTORY MUTUAL          )
INSURANCE CO., et al.,     )
                              )
          Plaintiffs,      )
                              )
v.                          )        **Civil Action No. 3:04CV834**
                              )
DLR CONTRACTING, INC., et al.,  )
                              )
          Defendants.     )

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the following motions that seek both dispositive and, in one motion, non-dispositive relief, the motions having been submitted by each of the some seven parties defendant, save one (AlexCom & Associates, Inc., third-party defendant and counter claimant):[1]

1.    Ehlert/Bryan, Inc.'s Motion to Dismiss Third-Party Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6)[*sic*] or in the Alternative a Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 (docket entry nos. 44, 45);

2.    Dominion's Opposition to Ehlert/Bryan's Motion to Dismiss and, Alternatively, Dominion's Motion to Dismiss and Memorandum of Points and Authorities in Support (docket entry no. 56);

3.    Raphael Architects, P.C.'s Motion for Summary Judgment (docket entry no. 65);

4.    Defendant Robern, LLC's Motion for Summary Judgment (docket entry no. 74);

5.    Defendant DLR Contracting, Inc.'s Motion for Summary Judgment Pursuant to Rule 56 (docket entry no. 77);

---

[1] The motions are listed in chronological order of submission and they will be addressed *ad seriatim.*

6.      Mitek Industries, Inc.'s Motion for Summary Judgment (docket entry no. 80);

7.      Dominion's Motion to Exclude Expert Testimony and Expert Witnesses at Trial and Memorandum of Law in Support (docket entry no. 83);

8.      Dominion's Motion for Summary Judgment to the Plaintiffs' Complaint and Memorandum of Points and Authorities in Support (docket entry no. 84);

9.      Ehlert/Bryan's Supplemental Motion to Dismiss the Third-Party Complaint (docket entry no. 87);

10.     Ehlert/Bryan's Second Supplemental Motion to Dismiss the Third-Party Complaint (docket entry no. 93); and

11.     Plaintiffs' Motion for Reconsideration of the Court's Judgment of September 15, 2005 (docket entry no. 103).

The case involves a subrogation action by the two insurance company plaintiffs that allege negligence resulting in property damage and economic loss caused by the actions of: (1) the general contractor (DLR Contracting, Inc. (DLR)) that oversaw a business construction project (shopping mall stores) that included a component (roof truss system) that ultimately failed, allegedly resulting in the damages for which relief is being sought; (2) a subcontractor (Robern, LLC (Robern)) of the general contractor that installed the roof truss system and made interim repairs before the covered incident; and (3) the company (Dominion Building Components, LLC (Dominion)) that Robern, the subcontractor of the general contractor, contracted with to fabricate (manufacture) the wooden roof trusses that ultimately failed during inclement weather resulting in the amount (approximately $500,000) the Plaintiffs paid for certain damages in response to the insurance claims submitted by the tenants (Eddie Bauer Outlet Store (Eddie Bauer) and The Electronics Boutique Store (EB)) that occupied the insured premises at the time of the covered incident. (Compl.; Va. Code Ann. § 38.1-31.2 (insurance

2

carrier's right of subrogation)).  Certain of the primary defendants[2] have, in turn, cross-claimed against one another (DLR against Robern and Robern v. Dominion) and asserted third-party claims against the manufacturer of the truss plates (metal connecting plates) that were allegedly defective (Mitek Industries, Inc. (Mitek)) (Dominion v. Mitek); the consulting structural engineering company, Ehlert/Bryan, Inc. (Ehlert/Bryan)) that purportedly provided design and engineering specifications, plans, and drawings for the original construction of the roof truss system (Dominion v. Ehlert/Bryan);  the architect for the original construction project, Raphael Architects, P.C. (Raphael)) (Dominion v. Raphael); and the structural engineering company, AlexCom & Associates, Inc. (AlexCom) that oversaw and certified as properly completed certain initial repair work of the roof system that subsequently failed (DLR v. AlexCom).  The third-party defendant AlexCom, has, in turn, cross-claimed against Dominion (AlexCom v. Dominion) and Dominion has returned the salvo with a counterclaim against AlexCom (Dominion v. AlexCom).  Finally, Dominion has objected to the Plaintiffs' designation and use at trial of certain expert evidence for failure to comply with Rule requirements for pretrial disclosure and governing orders of the court, the court having granted the motion at oral argument on the motion, subject to Plaintiffs' pending motion to reconsider.  (Dominion's Mot. Exclude Expert Test. & Expert Witness & Mem. in Supp.) (Dominion's Mem. re Experts) (citing Fed. R. Civ. P. 26(a)(2) and Order, June 28, 2005; Pls.' Mot. Recon. Court's J. of Sept. 15, 2005).  Although the motions seeking dispositive relief are both numerous and verbose, if not understandably redundant in content, there are issues common to most, if not all, that allow for more concise

---

[2]"Primary" is only meant in the sense of being the initial parties defendant, not as an assignment of liability.

analysis and resolution.

## Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, unsupported conclusory allegations by the non-moving party are not sufficient to create a genuine dispute of material fact sufficient to withstand the granting of dispositive relief.  Celotex Corp., 477 U.S. at 327 (White, J., concurring).  In essence, the court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-252.

## Undisputed Facts and Reasonable Inferences

The court deems the following to be the undisputed facts and reasonable inferences upon which the pending motions seeking dispositive relief are to be resolved:[3]

1.      The Plaintiff, Factory Mutual Insurance Company (FMIC), a Rhode Island corporation, provided comprehensive property insurance coverage during the relevant time period to the Eddie Bauer Outlet Store (Eddie Bauer) located in a Fredericksburg, Virginia shopping mall.  (Compl., ¶ 9).

2.      The Plaintiff, West Chester Surplus Lines (Westchester), a Georgia corporation, provided comprehensive property insurance coverage during the relevant time period to The Electronics Boutique (EB), a business that adjoined Eddie Bauer in the same commercial facility.  (Compl. ¶ 10).

---

[3]The court makes separate findings, *infra*, in regard to the motion to exclude the expert evidence.

4

3.      At the time of the covered incident, Eddie Bauer and EB were tenants pursuant to a lease agreement with the landlord/owner of the building (Car Care - Central Park Limited Partnership) (Car Care) that contained an anti-subrogation provision whereby the parties "elected to rely solely on their respective insurance policies to remedy any claims arising during the Tenants' lease terms."  (Dominion Mot. Summ. J. to Pls.' Compl. & Mem. P. & A. in Supp. (Dominion Mem.) n.1; ex. 14, ¶ 15 (the lease)).[4]

4.      Raphael, as the project architect, designed the facility that included the insured premises.  (Dominion Mem., ex. 2 at 13 (Raphael Answers Dominion's Requests for Admis. nos. 1, 3).

5.      Raphael subcontracted with Ehlert/Bryan as consulting structural engineers to prepare performance specifications for the roof truss system and review certain roof truss drawings.  (Ehlert/Bryan's Second Supp'l Mot. Dismiss Third-Party Compl. (Ehlert/Bryan's 2d Supp'l Mem.) ex. 1 at 2 (Ehlert/Bryan's Responses to Dominion's Requests for Admis. nos. 4-5).[5]

---

[4]Accordingly, although the plaintiff insurers are subrogated to the rights of the respective insured tenants and a tenant would typically have a cause of action against the landlord for breach of lease conditions that would include providing and maintaining suitable premises, the instant action could not be pursued directly against the landlord/owner because of the anti-subrogation clause that effectively results in the insured tenants indemnifying the landlord/owner. Therefore, if the action was to be initiated against the landlord/owner, the plaintiff insurers would, in effect, be suing themselves.  At the same time, where the landlord/owner has a third-party cause of action against any party found to be liable for the subject damage, and an indemnifier has the right to join such a third-party action, the plaintiff insurers, by "stepping into the shoes" of the tenant indemnifiers, can do likewise, as they have here.  *See* Virginia Elec. & Power Co. v. Carolina Peanut Co., 186 F.2d 816, 820 (4th Cir. 1951) ("The suit had been instituted by the Peanut Company to recover the damage which it had sustained as the result of the destruction of its property by fire; and it is elementary that in such a case an insurance company which has paid part of the loss is entitled to a *pro rata* portion of any amount that may be recovered, and is entitled to join in the suit for the recovery of damages."); Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 84 (4th Cir. 1973) ("[w]here there is partial subrogation, there are two real parties in interest under Rule 17.  Either party may bring suit . . . .").

[5]There is a dispute as to the extent of Ehlert/Bryan's involvement.  Dominion asserts in its third-party action against Ehlert/Bryan that, together with Raphael, it "provided the design, engineering, plans, drawings, specifications and approvals of shop drawings for the roof truss system" whereas Ehlert/Bryan describes a more limited role as summarized above that is accepted for purposes of resolving the relevant motion(s).  (Dominion Third-Party Compl. (docket entry no. 37) ¶ 42; Dominion Mem., ¶ 3; Ehlert/Bryan 2nd Supp'l Mem. ¶ 9).  The dispute

6.       DLR was the general contractor for the project.  (Compl. ¶ 11).

7.       DLR subcontracted with Robern to furnish and install the roof truss system.
         (Dominion Mem., ex. 3 at 1-2 (Robern Answers Dominion's Request for Admis.
         no. 4); ex. 4 at 13 (Robern Dep. Tr.).

8.       Robern subcontracted with Dominion for the latter to fabricate the wooden trusses
         for the project.  Id., ex. 3 at 2 (Robern Answers Dominion's Request for Admis.
         no. 5; Compl. ¶ 12).

9.       Mitek manufactured the metal connecting plates ("the factory installed push on
         metal plates that bind the joints of the trusses") and provided "sealed truss
         component designs . . . based upon the parameters given to Mitek by Dominion,
         for the fabrication of a roof truss system."  (Dominion Mem., ex. 4 at 12 (Robern
         Dep. Tr.); Dominion Third-Party Compl. ¶¶ 9-10; Mem. Supp. Mitek's Mot.
         Summ. J. (Mitek's Mem.) ¶¶ 5-7 at 2-3).

10.      Robern received the trusses upon delivery, inspected them, and would not have
         installed any thought to be defective, including any "that had connecting plates
         that were not property set."  (Dominion Mem., ex. 4 at 18-20, 77-78 (Robern Dep.
         Tr.)).

11.      Construction was completed on or about September 4, 2001.  (Compl. ¶ 13).

12.      On or about March 7, 2002, it was determined that the roof system was failing and
         in need of repair whereby some of the metal connecting plates were not properly
         seated.  (Compl. ¶ 14; Dominion Mem., ex. 4 at 23 (Robern Dep.Tr.)).

13.      AlexCom was hired by DLR to investigate and prepare a repair plan for the roof
         trusses that had failed.  (Dominion Mem., ex. 7 at ¶ 7 (AlexCom Answer Pl.
         Interrog. no. 7).

14.      Robern performed the repair work.  (Compl. ¶ 15).

15.      AlexCom ultimately certified "that the roof truss structure . . . [is] structurally
         sound and can support the design loads required for the building including the
         stone ballast on the roof."  (Dominion Mem., ex. 10).

16.      The original landlord/owner of the building, Car Care, sold the premises to
         Fredericksburg 35, LLC (Fredericksburg 35), as of December 23, 2002.  (Def.
         DLR Contracting, Inc.'s Mem. Supp. Mot. Summ. J. Rule 56 (DLR Mem.), ex. A

────────────────────

does not impact on resolution of any relevant motion.

(Pls.' Answer DLR's Request for Admis. nos. 20-21)).

17.    The successor landlord/owner, Fredericksburg 35, adopted either the same or similar leases as in effect between Car Care and the tenant insureds, including the anti-subrogation provision. *(See* Dominion's Mem., n.1).

18.    A portion of the roof in the same area as had been repaired earlier collapsed following a heavy snowfall on February 18, 2003. (Compl. ¶ 17).

19.    As a result of the roof breach, weather conditions damaged property inside each store, including inventory, display racks, furnishings, etc. and forced both stores to close for business for a period of time. (Compl. ¶ 18).

20.    The Plaintiffs are not seeking relief for claims directly related to the roof truss system, *i.e.*, the cost of repair and/or replacement; rather, the action is based on the consequential damage to the property inside the respective business premises and the economic damages associated with loss of business for the period the stores were closed for repairs. (Compl.; DLR's Mem., ex. B, ¶ C at 7 (Pls.' Initial Rule 26 Discl.)).

**Analysis**

The various defendants offer different reasons for the roof failure, including faulty design (and who was responsible for same), defective manufacture of the connecting plates, defective fabrication of the trusses, defective installation (and failure to inspect properly), and/or faulty repair and certification of the repair necessitated by the initial failure of the trusses in March 2002. The issue of what caused the ultimate failure of the roof system and which party or parties may be liable obviously constitutes a genuine issue (or issues) of disputed material fact that precludes dispositive relief on those issues at this stage with the sole exception of any potential liability for defective manufacture of the connecting plates by Mitek for which there is no supporting evidence and, indeed, expert testimony to the contrary as discussed later herein. Rather, the question for resolution of at least the pending motions submitted by the primary

defendants[6] is whether potential recovery is precluded as a matter of law regardless of ultimate responsibility because of the lack of any duty owed by the defendant involved to the insured tenants (to whose rights the plaintiff insurers are subrogated) or whether the Plaintiffs are restricted to seeking only contractual damages mandated by application of the so-called economic loss rule whereby recovery can only be had by those parties in privity of contract for contractual damages as opposed to those asserted here in tort for alleged negligence.

***Common Law Duties In Tort To Third Parties***

This is a subrogation action in tort, not contract, in which it is alleged that one or more of the primary defendants, DLR, Robern, and Dominion, were negligent in one or more ways resulting in damages, both property and economic, to the business premises of the insured tenants. (Compl.). In order to sustain a cause of action based on negligence, a plaintiff must establish "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damages." Atrium Unit Owners Ass'n v. King, 585 S.E. 2d 545, 547 (Va. 2003). Accordingly, the issue is whether there is a legal duty in tort owed by a defendant to third parties, such a duty being distinguished from whatever contractual obligations and possible relief may exist for any breach of contract affecting any entity with which a defendant was in privity. In this regard, the determination of whether such a duty exists is a question of law: "The existence and scope of duty is of course a threshold issue . . . and the question in any context whether and in what form any legal duty exists is a question of law for the courts . . . to be decided on the specific facts of

---

[6]Some additional considerations apply to the various cross-party and third-party actions, including issues of indemnification and contribution.

the case." Farwell v. Un, 902 F.2d 282 (4th Cir. 1990) (internal citations omitted).[7]

The Defendants emphasize established Virginia law for the proposition that "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 594 S.E. 2d 610, 613 (Va. 2004). Thus, in Mann v. Clawser, the Court held that "[i]n building and construction *contracts* it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." 59 S.E. 2d 78, 84-85 (Va.1950) (quoting 17 C.J.S., Contracts § 329 n.53 (emphasis added). Similarly, "[a]bsent a provision to the contrary, implicit in every *contract* of employment between an owner and an architect is the duty of the architect to 'exercise due care of those reasonably skilled in the business.'" Nelson v. Commonwealth, 368 S.E. 2d 239, 243 (Va.1988)

---

[7]As a preliminary matter, Dominion invokes the so-called "completed and accepted" doctrine whereby it argues that no duty was owed to the insured tenants once the work was completed and accepted by the owner, Car Care. (Dominion's Mem. at 11-18). Indeed, the Virginia Supreme Court held in an early case that:

> the independent contractor is not liable for an injury to person or to property of one not a party to the contract, occurring after the independent contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him, though the injury resulted from the contractor's failure to properly perform his contract.

McCrorey v. Thomas, 63 S.E. 1011 (Va. 1904).

However, the doctrine was subsequently modified by the enactment of Va. Code § 8.01-39 which provides that completion and acceptance is not a defense "[i]n any civil action in which it is alleged that personal injury, death by wrongful act *or damage to property has resulted from the negligence of* or breach of warranty by an independent contractor." Va. Code Ann. § 8.01-39 (emphasis added). Accordingly, the defense will not be addressed further, and it appears that the argument has been abandoned in any event. *See* n.10, *infra*.

(quoting Surf Realty Corp. v. Standing, 78 S.E. 901, 907 (Va. 1953) (emphasis added)).  It

therefore appears to be well-established in Virginia law that any duty owed by a party that gives

rise to a negligence action by a third-party not in privity of contract must be a duty imposed by

common law or statute, not by contract:

> [i]f the cause of complaint be for an act of omission or non-
> feasance which, without proof of a contract to do what was left
> undone, would not give rise to any cause of action (because no
> duty apart from contract to do what is complained of exists) then
> the action is founded upon contract, and not upon tort.  If, on the
> other hand, the relation of the plaintiff and the defendants be such
> that a duty arises from that relationship, irrespective of the
> contract, to take due care, and the defendants are negligent, then
> the action is one of tort.

Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc., 507 S.E. 2d 344, 347

(Va.1998)(quoting Oleyar v. Kerr Trustee, 225 S.E. 2d 398, 399-400 (Va. 1976)).

There is a duty of due care that may be owed to third parties by those with whom there is

no privity.  In Blake Const. Co. v. Allen, a case focused on issues of contract and privity, the

Court observed that while there are contractual obligations and remedies for any breach between

those in privity, there is also a duty of care "in negligence" that may be owed to third parties not

in privity:

> A duty to use ordinary care and skill is not imposed in the abstract.
> It results from a conclusion that an interest entitled to protection
> will be damaged if such care is not exercised.  Traditionally,
> interests which have been deemed entitled to protection in
> negligence have been related to safety or freedom from physical
> harm.  Thus, where personal injury is threatened, a duty in
> negligence has been readily found.  Property interests also have
> generally been found to merit protection from physical harm. . . .

353 S.E. 2d 724, 726 (Va. 1987) (citing Crowder v. Vandendeale, 564 S.W. 2d 879, 882 (Mo.

1978)).

Case law from other jurisdictions is perhaps even clearer than Virginia's own in a consistent re-affirmation of such a common law duty based ultimately on common sense.  For example, the court in Iglehart v. Bd. of County Comm'rs of Rogers Co., emphasized that: "[g]enerally a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'"  60 P.3d 497 (Okla. 2002).  Stated another way, as urged by the Plaintiff, "whenever one person is by circumstances placed in such a position with regard to another, that, if he (she) did not use ordinary care and skill in his (her) own conduct, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."  (Pls.' Br. Opp'n Def. DLR's Mot. Summ. J. at 6-7 (docket entry no. 88) (citing Iglehart, 60 P.3d at 502).

The existence of such a common law duty is further confirmed by such precepts as "superseding cause," *i.e.*, whether responsibility for alleged negligence is shifted to another party because of intervening action as asserted by Dominion in partial support of its motion for summary judgment.  (Dominion's Reply to Pls.' Opp'n Mot. Summ. J. (docket entry no. 95)).  The concept would not exist if liability was confined to issues of privity of contract.  Simply stated, a third-party such as a tenant or a tenant's customer has the right to expect that "the roof won't fall in" as the result of someone's negligence in its design, fabrication, assembly, inspection, and/or repair.  The duty involved is that to provide due care as basic as providing reasonably safe conditions suitable for the purposes intended.  *See also* Gonella v. Lumbermans Mut. Cas. Co., 64 Va. Cir. 229 (2004) (holding that a contractor had a common law duty, independent of contractual obligations, to perform on the contract so as to protect third parties

from unreasonably dangerous conditions).

If a breach of the contractual provisions of a lease with a party in privity, *i.e.*, a tenant, occurs, relief can only be sought in contract, not tort.  Furthermore, if *only* economic losses are claimed, *e.g.*, lost business revenue, only contractual relief can be sought and *only* by one in privity of contract.  At the same time, if the alleged breach of the duty does not implicate contractual provisions and if damages other than for economic losses are being sought, *e.g.*, damage to property not subject of the contract, then an action may be maintained in tort against those whose negligence is found to have proximately caused the claimed damages, regardless of whether the parties were in privity.

Here, although on the one hand the governing lease allowed the tenant to maintain a cause of action for "the negligence or wilful misconduct of the Landlord, its agents, contractors or employees," if such negligence was the sole cause of damage, it also provided through an anti-subrogation clause for the indemnification of the landlord/owner by the tenant that required the tenant to rely on its own coverage to remedy any claims arising from the actions of third parties or any "peril to property that is covered under a standard all-risk or Special Form-Causes of Loss Policy, whether or not such insurance is actually in force. . . ."  (Dominion's Mem., ex. 14 ¶¶ 13, 15).  Therefore, contractual provisions are not implicated in the pending claims and the remaining question is whether the action is nevertheless precluded by application of the economic loss rule.

### The Economic Loss Rule

The economic loss rule stands for the proposition, as defined by statute and interpreted by case law, that a cause of action in which only economic damages are sought can only be

maintained against a party that was in privity of contract.  Blake Constr. Co., 353 S.E.2d at 726;

Gerald M. Moore & Son, Inc. v. Drewry, 467 S.E. 2d 811(Va. 1996) ("Virginia's economic loss

doctrine precludes the recovery of damages based on economic loss alone"); Bryant Electric Co.

v. Fredericksburg, 762 F.2d 1192 (4th Cir. 1985).  At the same time, if an action for negligence is

brought and damages other than, or in addition to, economic losses are alleged, including

property damage, privity is not required.  Va. Code Ann. § 8.01-223.  Indeed, the Fourth Circuit

in Bryant Electric held in interpreting Va. Code Ann. § 8.01-223 that it "abolishes the privity

requirement in cases involving injury to person or injury to property resulting from negligence,

[but] it does not, however, appear to abolish the common law requirement of privity for

negligence suits in which the plaintiff has suffered only economic loss."  762 F.2d at 1195.

Moreover, if the "injury" is only to the product or property itself that was the subject of contract,

any loss or dimunition in value is a matter of "disappointed economic expectation" (or stated

another way, a failure to receive the full benefit of the bargain) for which relief lies in contract –

not tort – and thereby requires privity for pursuit of any claim.  East River Steamship Corp. v.

Transamerica Delaval, Inc., 476 U.S. 858 (1986); Sensenbrenner v. Rust, Orling & Neale,

Architects, Inc., 374 S.E. 2d 55 (Va.1988).

        DLR, as well as other defendants, rely on the Sensenbrenner decision as a "be all to end

all" in support of their consistent positions that the application of the economic loss rule bars any

recovery by the Plaintiffs here.  However, their reliance on Sensenbrenner is misplaced.

Sensenbrenner involved a residential construction contract that included construction of a

swimming pool and attendant accoutrements.  The pool leaked.  The subcontractor of the general

contractor who built the pool "messed up" in its construction.  The unhappy homeowners sued

the subcontractor directly, along with the architect who designed the house and the pool.  The Virginia Supreme Court held that the claimed damages were *all* in the nature of purely economic losses as part of the same contractual package and the homeowner plaintiffs simply did not "realize the benefit of the bargain"  –  they suffered from disappointed economic expectations. Id. at 58.  As such, they were restricted to contractual remedies from the party with whom they were in privity and that was neither the subcontractor nor the architect.

Although, as in Sensenbrenner, the various parties defendant here were not in privity with the insured tenants, the subrogated cause of action by the Plaintiff insurers can nevertheless be maintained for negligence against DLR and any other party alleged to be negligent where more than only economic losses are being sought.  In fact, the Plaintiffs seek damages for both the "injury" to property that was not the subject of contractual obligation between the parties, *e.g.*, inventory, display fixtures, etc. (Findings ¶ 19) as well as economic loss (Findings ¶ 20) resulting from the alleged negligence of one or more of the Defendants.  (Compl.).  Accordingly, the claims by the Plaintiffs against the primary defendants can proceed subject to a determination at trial of the disputed material fact(s) regarding whether a particular defendant was negligent and whether such negligence proximately caused any of the damages alleged.[8]

### Ehlert/Bryan's Motion

Ehlert/Bryan seeks dispositive relief as to Dominion's Third-Party Complaint against it by asserting initially that there was no common law duty owed to Dominion "to protect persons

---

[8]A separate issue is involved in the motion filed by Mitek in which it seeks dispositive relief on the alternative ground that the undisputed expert evidence conclusively establishes that it could not be held liable on the basis of any alleged activity it did or did not undertake.  (Mem. Supp. Mitek Industries, Inc.'s Mot. Summ. J. (Mitek's Mem.) (docket entry no. 81).

and property from loss resulting from injury caused by Ehlert/Bryan's defective or deficient

design."  (Mem. P. & A. Supp. Third-Party Def. Ehlert/Bryan's Mot. Dismiss Third-Party

Compl. per Fed. R. Civ. P. 12(b)(6) Alt. Mot. Summ. J. per Fed. R. Civ. P. 56 (Ehlert/Bryan's

Mem.) (docket entry no. 46) at 4).   Ehlert/Bryan also asserts that Dominion's claim for breach of

express or implied warranty of fitness for a particular use must fail as a matter of law because no

express warranty breach is alleged and any implied warranty would only apply for the benefit of

its "employer" in the project,  Raphael, with which Ehlert/Bryan was in privity, not Dominion

with which it had no privity.  Id. at 4-6.   Ehlert/Bryan also asserts that Dominion's claim for

constructive fraud is, in reality and law, "a claim for negligent breach of contract to which

Dominion was not even a party,"  therefore requiring dismissal because lack of privity.  (Id. at 6-

8).  In its Supplemental Motion to Dismiss (docket entry no. 87), Ehlert/Bryan incorporates the

argument(s) presented by Raphael in support of its request for dispositive relief on the presumed

basis[9] that because "[t]he claim alleged by Dominion against Raphael is not derivative of the

claim alleged by the plaintiffs or AlexCom against Dominion," Dominion cannot recover for

contribution for, in effect, a different "injury."  (Mem. Supp. Raphael Architect, P.C.'s Mot.

Summ. J. (Raphael's Mem.) (docket entry no. 66) at 5-8).[10]  Finally, in its Second Supplemental

Motion to Dismiss the Third-Party Complaint, Ehlert/Bryan adopts Dominion's arguments that

there was no common law duty to the insured tenants that was breached by Dominion so as to

---

[9]The reason that incorporating the arguments of another wholesale is to be discouraged is that the court may miscomprehend what is referenced.  The court will nevertheless attempt to address what it perceives to be the relevant issues here in order to resolve matters in a comprehensive way.

[10]The court addresses the issue in regard to Raphael's motion, *infra*.

15

support Ehlert/Bryan's argument that there is nothing on which to base the third-party action against Ehlert/Bryan; that application of the economic loss rule precludes any recovery anyway; and that Ehlert/Bryan cannot be held liable for only providing certain performance specifications where the cause of the failure was the improper design and fabrication of the trusses. (Ehlert/Bryan's 2nd Supp'l Mot. Dismiss Third-Party Compl. (Ehlert/Bryan's 2d Suppl. Mot.) (docket entry no. 93)).

Dominion responds to the effect that it has sufficiently asserted a breach of a duty that Ehlert/Bryan owed to Dominion that is independent of contract, namely, "to protect the property of others" for which privity is not required and that, if nothing else, Dominion is entitled to indemnification/contribution from Ehlert/Bryan if Dominion is found liable because such liability would be based on Ehlert/Bryan's negligence in providing defective design, plans, and specifications to Dominion for the fabrication of the subject roof trusses.  (Dominion's Opp'n to Ehlert/Bryan's Mot. Dismiss & Alt., Dominion's Mot. Dismiss & Mem. P. & A. Supp.) (Dominion's Mem. re Ehlert/Bryan Mot.) (docket entry nos. 55, 56) at 5-7)).  Furthermore, Dominion argues that the plans and specifications supplied by Ehlert/Bryan constituted express and/or implied warranties in that "if such plans and specifications were followed, then the completed construction will yield a satisfactory result."  (Dominion's Mem. re Ehlert/Bryan Mot. at 8) (citing authority).  Finally, Dominion retorts that it has sufficiently asserted a constructive fraud claim on the basis that the plans and specifications contained material false representations that were at least negligently made and they were relied on by Dominion to its detriment.  Id. at 9.

Dominion's third-party action against Ehlert/Bryan is simply one for indemnification (or

contribution) *if* Dominion should be held liable for any of the claimed damages incurred by the insured tenants to whose right of recovery the Plaintiffs are subrogated.  As such, the issue is not whether there was a common law duty owed by Ehlert/Bryan to Dominion, but rather whether there was a common law duty owed by Dominion to the insured tenants, and, if so, whether that duty was breached by Dominion due in whole or discernable part to negligence on the part of Ehlert/Bryan for which indemnification or contribution could apply.  Blake Constr. Co., 353 S.E. 2d at 726.  Having established that the basic common law duty existed between Dominion and the insured tenants, the remaining issues of whether Dominion breached that duty by some act or acts of negligence resulting in the claimed damages and, if so, whether such act(s) of negligence were, in turn, a proximate result of negligence on the part of Ehlert/Bryan as sufficiently alleged in the third-party complaint, obviously involve genuine issues of disputed material fact that cannot be resolved at this juncture.  At the same time, the mere act of providing plans and specifications does not, in and of itself, necessarily convey an implied, let alone express warranty that extends to a party not in privity (aside from whether the breach of an express warranty is alleged in the third-party complaint); rather, as correctly noted by Ehlert/Bryan, such contractual obligations, if any, extend only to the party in privity of contract which is Raphael, not Dominion.  (Ehlert/Bryan's Mem. at 4-6).  Surf Realty, 78 S.E. 2d at 907.

For the reasons already discussed, the economic loss rule does not bar recovery as to the underlying action between the insured tenants and Dominion.  Finally, the claim of constructive fraud asserted by Dominion in its final claim of its third-party complaint requires proof of intentional falsehood or at least a degree of recklessness that cannot be based merely on providing plans and specifications that were simply wrong or inadequate for the purpose

17

intended.  For all these reasons, Dominion's Third-Party Complaint survives, but only its basic claim for indemnification or contribution for any breach of the common law duty of due care owed by Dominion to the insured tenants for which it may be found liable and is able, in turn, to attribute to any negligence of  Ehlert/Bryan.

### Dominion's Motion to Dismiss and for Summary Judgment[11]

Dominion moves to dismiss the Plaintiff's Complaint against it and the cross-claim asserted by AlexCom.  (Dominion's Opp'n Ehlert/Bryan's Mot. Dismiss Alt. Dominion's Mot. Dismiss & Mem. P. & A. in Supp.  (Dominion's Opp'n Mem.) (docket entry nos. 55,56)). Dominion bases its motion to dismiss the Complaint on the alleged failure of the Plaintiffs to allege sufficient facts to support the existence of any common law duty owed by Dominion to the insured tenants; that it was released from any potential liability once its work was "completed and accepted by the original owner;[12] that the Plaintiffs' damages are purely economic in nature so as to be precluded from recovery by the economic loss rule; and that the intervening negligence of AlexCom in its role in the failed interim roof repair constitutes an intervening cause that precludes a finding of any possible negligence on the part of Dominion.  (Dominion's Opp.' Mem. at 10-14).  For the reasons previously discussed, the court concludes there was a common law duty of due care owed to the insured tenants by any party that participated in a material way in the design, fabrication, construction, inspection, and/or repair phases of the

---

[11]Dominion filed a separate, subsequent motion for summary judgment (docket entry no. 84) in which the same essential arguments are made and addressed here.

[12]An argument apparently abandoned by Dominion in subsequent submissions.  *See* Dominion's Reply Pls.' Opp'n Dominion's Mot. Dismiss (docket entry no. 64) (Dominion's Reply Mem.) at 5).

construction project; that the doctrine of "completed and accepted" has been abrogated in

Virginia statutory law; that the economic loss rule does not preclude potential recovery because

non-economic, property damages are also claimed; and that facts are alleged which are sufficient

to establish, if true (as they must be considered at this stage) that AlexCom's actions did not

constitute an intervening cause absolving Dominion of any potential liability.

### Raphael's Motion for Summary Judgment

Raphael moves for summary judgment as to Dominion's Third-Party Complaint against it

on the basis that Dominion's claim against Raphael is not derivative of either the Plaintiffs'

claims or AlexCom's cross-claims against Dominion as is necessary to properly maintain such a

third-party action ("Raphael is not a person who is, or may be liable to Dominion for all or part

of the plaintiffs' or AlexCom's claim against Dominion"); and that, as in Ehlert/Bryan's motion

(that Raphael incorporates), no recovery can be obtained by Dominion on the basis of express or

implied warranty or constructive fraud.  (Mem. Supp. Raphael Architect, P.C.'s Mot. Summ. J.

(Raphael's Mem.) (docket entry no. 66)).

Raphael's argument regarding its protestation that Dominion's claim is not derived from

either the Plaintiff's claim or AlexCom's cross-claim against Dominion is predicated on the

assertion that the Plaintiffs' claims have been distilled by expert evidence during discovery to a

claim that only can implicate Dominion, *i.e.*, faulty fabrication.  It is undisputed that Raphael as

the architect had no role in the actual fabrication process and that AlexCom's cross-claim theory,

based on its proposed expert evidence, is that the cause of any damage was the negligent

manufacture of the connecting plates used to fabricate the trusses, again an activity in which the

architect played no role.[13]

It is not necessary that there be identity of claims based on the same theory of liability for a party to maintain a third-party cause of action.   Aetna Cas. & Sur. Co. v. Kochenour, 45 F.R.D. 248 (M.D. Pa. 1968).   A third-party claim need only be a derivative action of the underlying claim and not an identical one.   Id.   Here, the Plaintiffs assert that Dominion was negligent for a number of reasons, including faulty fabrication of the roof trusses, and Dominion asserts in its third-party action that if there was any negligence, it was due to the negligence, among others, of the architect (Raphael) in providing a defective design.   The various third-party claims all relate to the same "injury," namely, the roof collapse, and of course the theory of how the "injury" occurred in terms of which defendant participant was negligent is, by definition, going to differ as to each party.[14]   Aetna, 45 F.R.D. at 251.   To hold otherwise, to require as Raphael urges that a third-party claim be restricted to the same theory of recovery based on the same evidence, would turn the relevant rules of procedure (Fed. R. Civ. P. 14 and 20) on their respective heads. (Dominion's Opp'n Raphael's Mot. Summ. J. (Dominion's Opp'n Mem. re Raphael's Mot.) (docket entry no. 71) at 11-13).   Furthermore, to the extent that Raphael's motion is based on what it perceives to be the import of the expert evidence disclosed in pretrial discovery, and aside from whether it is even appropriate to resolve a motion for dispositive relief on the basis of such

---

[13]Aside from whether there is sufficient expert evidence proffered to sustain the claim that the connecting plates were the result of a defective manufacturing process by Mitek (discussed later), it is interesting to note (or disappointing) that each party defendant has found apparently qualified expert evidence to sustain each of their widely divergent theories of what caused the roof failure.

[14]Which is one of the reasons for the court to bifurcate the third-party actions from the underlying cause of action to eliminate unnecessary jury confusion.

proffered evidence,[15] the simple fact of the matter is that there are competing expert disclosures

that precludes resolution as a matter of law, including one that places partial responsibility on

Raphael's own shoulders.  (Dominion's Opp'n Mem. re Raphael's Mot. at 11-12).[16]

### Robern's Motion for Summary Judgment

Robern moves for summary judgment as to the primary claim(s) of the Plaintiff insurers

on the basis that there can be no recovery by Plaintiffs in the absence of privity of contract

between the Plaintiffs and Robern where "[t]he damage alleged in this case is a purely economic

loss and thus falls under the general rule barring plaintiff's recovery" (the economic loss rule);

that no action can be maintained against Robern for negligence in the absence of a common law

duty owed to Plaintiffs' insured; and even if such a cause of action could be maintained in theory,

it cannot, as a matter of law, survive the Plaintiffs' own expert evidence that the roof failure was

due to the faulty fabrication of the roof trusses and  not anything else, including the installation

by Robern.  (Mem. Supp. Robern L.L.C.'s Mot. Summ. J. (Robern's Mem.) (docket entry no.

---

[15]Though Raphael argues otherwise, case precedent exists in this circuit to support the
concept that any reliable evidence outside the pleadings may be considered in resolving a motion
for summary judgment.  *See* Austin v. Clark Equipment Co., 48 F.3d 833, 835 (4th Cir. 1995)
(emphasis added) ("Summary judgment is appropriate in those cases where it is established
through pleadings, affidavits, depositions, *and other discovery documents* that there exists no
genuine issue of material fact and the moving party is entitled to judgment as a matter of law." )
The problem, of course, with considering such proffered evidence as expert witness reports is
that they are typically subject to challenge and varying interpretation as they are here with the
exception of the evidence regarding Mitek's potential liability as discussed later herein.

[16]Raphael's remaining arguments involve the same issues concerning Dominion's claims
for breach of warranty and constructive fraud, already addressed herein.  In the alternative in
response to all of Raphael's arguments, Dominion asserts that Raphael must nevertheless remain
in the case as a necessary party, pursuant to Fed. R. Civ. P. 20.  (Dominion's Opp.' Mem.
Raphael at 16-18).  It is not necessary to address the issue since Raphael remains a viable
third-party defendant for other reasons.

75).  Dominion responds to Robern's arguments, consistent with the positions it takes on all the

motions seeking dispositive relief, namely, the economic loss rule does not bar recovery and

privity of contract is not required where property damage to other than that which was the subject

of any contractual agreement are being sought, *e.g.*, inventory, display fixtures, etc.; that a

common law duty of due care does exist between Robern as the contractor who constructed the

facility and the Plaintiffs' insureds (not the owner) and any third-party reasonably expected to use

the premises; and there is at least competing expert evidence as to whether Robern's installation

of the roof trusses was deficient, including deposition testimony of Robern's representative that

an inspection of the trusses would have been conducted that would have revealed any problems

with their fabrication, a position that obviously creates a genuine issue of material fact that

cannot be resolved at this juncture.  (Pls.' Br. Opp'n to Def. Robern, LLC's Mot. Summ. J.)

(docket entry no. 89)).  The court concurs for the reasons already discussed in regard to

Raphael's motion for summary judgment.

### DLR's Motion for Summary Judgment

DLR moves for summary judgment as to the primary claim by the Plaintiff insurers on

several bases.  First, DLR argues that it did not owe any common law duty of care in tort

independent of its contractual duties to construct the structure and make the interim repairs and

that the Complaint fails to allege the existence of any such duty.  DLR asserts that it only owed

contractual duties to the original owner with which it contracted to be the general contractor on

the project and the sale of the property to a successor entity with which DLR was not

contractually obligated or otherwise in privity insulates it from potential liability in the instant

matter.  DLR also urges that there is no expert evidence available in any event that attributes any

22

negligence to DLR as the general contractor, and finally, application of the economic loss rule bars recovery of all economic damages by the Plaintiffs against DLR in any event where there was no privity of contract between DLR and the owner of the premises at the time of the incident.  (Def. DLR Contracting, Inc.'s Mem. Supp. Mot. Summ. J. Per. Rule 56 (DLR's Mem.) (docket entry no. 78)).

In response, the Plaintiffs consistently argue that DLR did owe "a duty to the plaintiffs under Virginia law to perform its construction and repair of the roof in a reasonably safe manner because injury to the plaintiff's property resulting from DLR's negligence, which DLR was in the best position to prevent, was plainly foreseeable . . ."; that the Complaint sufficiently alleges the breach of such a duty by DLR for its negligence "in both the original construction and repair of the premises"; that a complete review of the available expert evidence in fact discloses a basis for holding DLR liable as the general contractor if, for no other reason, then the interim repairs to the roof truss system were not properly "coordinat[ed]" by the general contractor, DLR; and that the economic loss rule does not apply so as to preclude recovery.  (Pls.' Br. Opp'n Def. DLR's Mot. Summ. J. (Docket entry no. 88).

As the Plaintiffs point out, the governing rule of civil procedure (Fed. R. Civ. P. 8) and supporting case precedent only require a pleading to contain a short and plain statement of a claim demonstrating that the moving party is entitled to the relief demanded.  Id., at 5, citing Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). Here, the Complaint sufficiently states the claim(s) against DLR by alleging that DLR was negligent in its role as general contractor in both the original construction of the structure and the failed interim repair.  (Compl. ¶¶ 3, 11, 15, 17, 25, 26, 34, 35).  Furthermore, where an independent duty is deemed to have been owed by the

23

general contractor in tort to the insured tenants, the lack of privity with the successor

owner/landlord is irrelevant.   Contrary to DLR's review, the court's reading of the Plaintiffs'

expert report (the Greve report) includes reference to the initial construction and failed repair

work supervised by DLR as the general contractor creating a genuine issue of disputed material

fact sufficient to preclude summary judgment.   Finally, the economic loss rule is not implicated

in the instant case for the reasons previously discussed.

### Mitek's Motion for Summary Judgment

Mitek moves for summary judgment as to the claims pending against it by Dominion on

the basis that it did not "owe" any independent common law duty to Dominion in tort; that the

claims for constructive fraud are nothing more, at most, than claims for negligent breach of

contract that can only be maintained in contract between parties in privity; the only available

expert testimony from no less than four separate sources confirm that the roof failure was due to

the negligence of others; and, finally, that Dominion's claim for equitable indemnification

(exoneration) is premature in the absence of a judicial determination of negligence on the part of

Dominion.[17]   (Mem. Supp. Mitek Industries, Inc.,'s Mot. Summ. J. (Mitek's Mem.) (docket entry

no. 81)).   Dominion responds to the effect that it is seeking contractual damages from Mitek with

whom it was in privity for breach of contract and breach of warranty; that if the Plaintiffs and/or

AlexCom (that has asserted a cross claim against Dominion) are able to sustain a claim of

---

[17]Ehlert/Bryan has filed a reply to Mitek's motion in which it disputes several of Mitek's statements of undisputed fact in which negligence is attributed to Ehlert/Bryan in providing defective design and engineering plans, drawings, specification, and shop drawing approval. However, Ehlert/Bryan does not have a claim against Mitek, nor is it defending a claim by Mitek, and therefore any issue of disputed fact between the two does not have to be resolved given the court's resolution of the only claims pending against Mitek by Dominion that dismisses Mitek from the litigation.

negligence against Dominion based on the violation of some common law duty, then Dominion must be able to maintain claims of negligence and/or constructive fraud against Mitek; that even though Dominion can sustain its claims against Mitek on other than expert evidence, the available expert evidence at least "implicates Mitek" so as to create genuine issues of disputed material fact sufficient to preclude dispositive relief; and that, at the very least, Dominion has the right to preserve its anticipatory right of exoneration against Mitek if it should be held liable for negligence to the Plaintiffs and/or AlexCom.  (Dominion's Opp'n Mitek's Mot. Summ. J. (Dominion's Opp'n Mitek's Mot.) (docket entry no. 94)).

Each of Dominion's claims against Mitek, be they in tort or contract, are necessarily premised on Dominion being able to establish Mitek's liability – in contract or tort – for whatever role Mitek undertook.  Dominion asserts Mitek is liable whether it had the more circumscribed role Mitek describes as "only" providing sealed truss component designs and design drawings "based upon the parameters given to Mitek by Dominion" as well as the metal connector plates, or the more expanded version espoused by Dominion that Mitek provided detailed, sealed shop drawings for the roof trusses that specified "the size and location of the truss connector plates" based on Mitek's actual knowledge of the type of trusses to be fabricated, that the connector plates were manufactured by Mitek improperly, and that Mitek conducted an inadequate inspection of the interim repairs when it should have been determined that more "conservative nail plate sizing" was necessary.  (Mitek's Mem. ¶¶ 7-9; Dominion's Opp'n Mitek's Mot. ¶¶ 1-7).

The court concludes, as a matter of law, that Mitek's liability in this case could only be established through expert evidence.  *See, e.g.*, U. S. v. Nwaigwe, 2000 WL 1087254, at *3 (4th

25

Cir. 2000)(unpublished)(holding that it was within the court's discretion to admit expert

testimony where the facts were of a technical nature, but not if the evidence related to matters

within the juror's common experience).  It is not enough to simply argue that the trusses broke

and therefore it must be the connector plates as opposed to several other options, including

inadequate load design and/or defective fabrication, *i.e.*, nailing the connector plates to the truss

framework during fabrication.  Aside from the issue of whether Dominion, as the moving party

against Mitek, can utilize the expert evidence of other parties to sustain its burden of proof, none

of the expert reports (disclosed as required, and to which any expert evidence at trial must strictly

comply), provides no more than a speculative basis to hold Mitek liable.  At the very most, and

as argued by Mitek, one expert (Craig Talcott) opined in his initial report that the use by Mitek of

a roll press rather than a vertical press "may have" contributed to the truss failure.  (Mitek Mem.,

ex. 1).  The same expert submitted a subsequent report in which the issue is not raised and even

if it had been repeated, the court finds it to be too speculative to survive any <u>Daubert</u> analysis.

<u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993) (rejecting the so-called "general

acceptance" test or <u>Frye</u> test).

### Dominion's Motion to Exclude Expert Testimony

Dominion moved to exclude for further use by the Plaintiffs certain proposed expert

evidence (John Field and Edward McCormack) for failure of the Plaintiffs to properly designate

them in a timely fashion and to provide sufficient disclosures as required by Fed. R. Civ. P. 26

and scheduling orders of this court.  (Dominion's Mot. Exclude Expert Test. & Expert Witnesses

at Trial & Mem. of Law Supp. (Dominion's Mot. to Exclude) (docket entry no. 83)).  The court

granted the motion at oral argument on the motion and now reaffirms its ruling in response to the

Plaintiff's motion to reconsider.  (Pls.' Mot. Recon. Court's J. Sept. 15, 2005 (Pls.' Mot. Recon.)

(docket entry no. 103)).

The court finds the following to be the relevant undisputed facts:

1.      The Plaintiffs made initial disclosures on March 31, 2005, pursuant to Fed. R.
        Civ. P. 26(a)(1)(A), of the names of some seventeen potential witnesses
        (including the two who are the subject of the motion), their addresses, and a brief
        description of the subject(s) of their discoverable information.  (Dominion's Mot.
        to Exclude, ex. A ¶¶ 8, 17 (Pls.' Initial Discl.)).

2.      The subject matter descriptions concerning the two individuals who are the
        subject of the motion to exclude stated, without identifying either one of them as a
        proposed expert witness, that the Plaintiff "believ[ed] that this witness [Field]
        may have information relating to, among other things, the measure of damages
        suffered by The Spiegel Group and Eddie Bauer as a result of the February 18,
        2003 roof collapse at its store located at 1661 Carl D. Silver Parkway,
        Fredericksburg, Virginia" and that "this witness [McCormack] may have
        information relating to, among other things, the measure of damages suffered by
        Electronics Boutique as a result of the February 18, 2003 roof collapse at its store
        located at 1661 Carl D. Silver Parkway, Fredericksburg, Virginia."  Id.

3.      The disclosure included information regarding projected business losses of the
        two business properties that incurred the damage, namely, lost business income
        and extra business expense.  Id., exs. B & C.

4.      The information did not include everything required by the Rule for initial
        disclosure of experts, e.g., a listing of other cases the witness had been involved
        in, educational background, fee arrangements, etc.  Id.; Fed. R. Civ. P. 26(a)(2).

5.      Subsequently the court entered an Order, dated June 28, 2005, modifying its
        earlier Scheduling Order, in which in pertinent part it directed that:

        The court's Scheduling Order is amended to provide for designation and
        disclosure of all expert reports and remaining information required by Fed.
        R. Civ. P. 26 by Plaintiff (including third-party Plaintiff) on or before July
        1, 2005, all defendants' designations and disclosures (including third-party
        defendants) to be made within thirty (30) days thereafter and any rebuttal
        designations by Plaintiff within fifteen (15) days thereafter.

        Order, June 28, 2005.

6.     The Plaintiffs did not include any reference to the same experts in any disclosure submitted by the July 1, 2005, deadline ("Admittedly, plaintiffs' expert disclosures provided on July 1 did not re-reference Messrs. Field and McCormack." (Pls.' Br. Opp'n Mot. Dominion Building Components, Inc. Mot. Exclude Expert Test. at Trial (Pls.' Br. Opp.') at 3; Pls.' Mot. Recon. ¶ 7).

7.     Thereafter, the Plaintiffs identified the subject witnesses in interrogatory responses that were served on or about August 22, 2005.  (Dominion's Mot. to Exclude, ex. A, interrog. no. 21 response).

8.     The interrogatory response of August 22 stated that the Plaintiffs "*may* also call John Field and Edward McCormack as experts on damages.  Their reports are included in Plaintiffs' Initial Disclosures and Plaintiffs' Expert Disclosures [submitted on July 1] are hereby amended to include them as well.  As discovery is ongoing, plaintiffs reserve the right to amend and/or supplement their response to Interrogatory no. 21 prior to the close of discovery."  Id. (emphasis added).

9.     Trial proceedings were rescheduled by the Order of June 28 to commence on November 15, 2005.  Order, June 28, 2005.

10.    The revised discovery cut-off date was October 7, 2005.  Id.

11.    The Plaintiffs did not seek leave of court or other relief to permit them to supplement the expert disclosure previously made or to otherwise amend the controlling scheduling order(s).

12.    Dominion filed the subject motion to exclude on August 26, 2005.  (docket entry no. 83).

The court ordered all expert witnesses and their respective reports to be identified and disclosed by July 1 - - period.  Id.  Any failure of a party to abide by the terms of the pretrial order (the Order of June 28) is to be addressed pursuant to Rule 16(f) that provides the court with broad discretionary power (and responsibility) to fashion appropriate sanctions "as are just, *and among others* any of the orders provided in Rule 37(b)(2)(B), (C), (D)."  Fed. R. Civ. P. 16(f) (emphasis added).  Accordingly, the court is not restricted to considering only the factors identified as relevant to the imposition of sanctions pursuant to Fed. R. Civ. P. 37(c)(1) for

failure to comply with discovery requirements, but the court nevertheless focuses on the same

essential considerations, namely:  (1) whether Dominion was surprised by the late disclosure; (2)

whether Dominion was prejudiced in a material way by the late disclosure; (3) what the

explanation is for the late disclosure; (4) the importance of the subject evidence for purposes of

trial; and (5) whether there was a reasonable opportunity to "cure" the problem or any lesser

sanction than exclusion, even with the possible imposition of cost and fee sanctions.  *See*

Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

As to the element of surprise, even though, as the Plaintiffs emphasize, there was initial

disclosure on March 31, that disclosure did not identify the individuals as proposed experts, and

even if the accompanying information could be discerned to pertain to specialized information, it

did not include all the information required by the governing Rule.  Fed. R. Civ. P. 26.

Therefore, when other disclosures were apparently made on the revised due date of July 1 and the

same individuals were *not* re-referenced, Dominion could reasonably conclude that they had been

"dropped" as potential witnesses, expert or not, for any number of reasons, *e.g.*, that alternative

method(s) would be used to introduce evidence of business losses at trial, or that such an element

of damage had been eliminated (for example, maybe the Plaintiffs thought they could not recover

such losses under the economic loss rule as has been urged by the Defendants).  Accordingly,

Dominion was surprised (as it confirms) almost two months later when the Plaintiffs attempted

to add the witnesses to their designation.  (Findings ¶ 7).  Even then, the effort was still tentative

where the individuals were identified as "may" be subject to being called.  (Findings ¶ 8).

Dominion moved immediately to challenge the effort, the time period of the June 28 Scheduling

Order for designation of defense experts having long passed.  (Findings ¶ 12). Even though

approximately three weeks remained after the hearing on the motion (when the motion to exclude was ruled on) before the close of discovery, the court does not have just cause to conclude that there was sufficient opportunity to "cure" the situation, even with the imposition on the Plaintiffs of attorney's fees and costs, especially where the initial disclosures were lacking for purposes of Dominion selecting an expert of their own in such a relatively brief timeframe if their motion had been denied at oral argument.  The court is not aware of any explanation being offered for the failure to timely identify and disclose other than the representations of counsel at the conclusion of oral argument concerning serious personal health issues that interfered during the relevant period.  As sympathetic as the court may be with what it accepts as having been extreme circumstances, the court cannot excuse the failure in the absence of consent by the opposing party (that was understandably declined in the interests of the client) and concern for having to act consistently in future cases.  In addition, it appears some disclosures were made on schedule with no reasonable explanation as to why the subject disclosures were not included and, more importantly, co-counsel was presumably available to assist if there was a problem.

The final factor that the court considered in granting the motion to exclude was the potential importance of such evidence to the Plaintiffs at trial.  Southern States, 318 F.3d at 597.  As to that factor, the court has no doubt but that such evidence, if properly presented, would be significant to the Plaintiffs' case.  At the same time, however, it is conceivable that the damages can be established by other means and, if not, all the more reason for the problem to have been avoided in the first instance.  In any event, the factor does not outweigh all the other considerations combined and, therefore, the motion to reconsider the court's earlier Order must be denied.

**Bifurcation of Trial Proceedings**

The court, in the process of wading through the morass of all the motions, also concludes, *sua sponte,* within the exercise of its discretion, that it is necessary in order to avoid jury confusion, with so many parties and competing claims (including multiple purported experts who are apparently prepared to offer differing theories of causation – if the court permits), to bifurcate the trial proceedings whereby the primary action of the Plaintiffs versus the primary defendants (Dominion, DLR, and Robern) will proceed initially with any third-party action to follow if either of the third-party plaintiffs (DLR and/or Dominion) are held liable to the Plaintiffs, the subsequent trial proceedings, if any, to be with a separate jury who would then be able to more clearly focus on whether "ultimate" negligence should be attributed to any one or more of the third-party defendants.

An appropriate Order shall issue.

_____/s/_____

Dennis W. Dohnal
United States Magistrate Judge

Dated: October 20, 2005